BOND *v.* STATE.

No. 41125 April 27, 1959 111 So. 2d 422

Jesse W. Shanks, Purvis; R. L. Calhoun, Hattiesburg, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

McGEHEE, C. J.

The appellant, Ernest A. Bond, was jointly indicted with Jim Allday, Jr. for the armed robbery of the grocery store and filling station of C. H. Gandy at Runelston, in Perry County, Mississippi, where they were alleged to have made an assault on him "by pointing a certain deadly weapon, to wit: A 22 caliber revolver, at him", and having put him "in fear of immediate, grave bodily harm and death" and took from his presence and against his will approximately $350 in money from his cash drawer.

Jim Allday, Jr. entered a plea of guilty to the charge, and on the trial on the merits of the case against the appellant, Ernest A. Bond, the said Allday testified that he had an accomplice in the robbery which occurred at approximately 8:45 P. M. on June 10, 1958. He did not disclose whom his accomplice was but contended that it was not the appellant here.

After the appellant had been tried and convicted and sentenced to the State Penitentiary for a term of life imprisonment, the said Allday made an affidavit on a motion for a new trial in which he stated that his accomplice in the robbery was Glenn DuBois; that the reason he did not make this disclosure during the trial of the appellant on the merits of the case was that he did not want to get anyone else in trouble, but that, rather than see the appellant serve the sentence for the crime, he had decided to disclose whom his real accomplice was in the robbery. The appellant also made an affidavit on the motion for a new trial, in which he again contended that he did not participate in the robbery, and that he did not learn whom the accomplice was until after his own case had been submitted to the jury, and that before and during his own trial had made a diligent effort to ascertain the identity of the accomplice of Jim Allday, since it was not claimed that there were more than two men participating in the robbery, and he was contending that he was

not with Jim Allday at the time thereof. The attorneys for the appellant made affidavit on the motion for a new trial that they had diligently sought to ascertain whom Allday's accomplice was but had been unable to get the information until after the appellant's trial and conviction.

However, the victim of the robbery, C. H. Gandy, testified that at about fifteen minutes to 9 o'clock he started to close his place of business for the night, and while standing at the gas pump at the front of the store and turning off a light thereon he heard a car drive up and leave the motor running a short distance from the store, and that in just a moment he heard someone walking toward the store and soon saw a man approaching as this person got under the light, and that this man told him that he "forgot the baby's milk"; that this man walked on into the store ahead of him, got the milk out of the cooler and sat it on the counter, and that thereupon "another fellow was standing in the door with a gun on his hip"; and that the appellant got all of the 20's, 10's, 5's and 1's out of the cash drawer and ran out of the store, and that then Jim Allday removed the coins from the cash drawer, put them in his pocket, and ran out of the store, telling him to be still and not move; that thereupon he soon heard the car leaving and going west toward Hattiesburg, and that he then called the Highway Patrol.

Gandy further testified that one of the men "had on a red shirt and khaki pants and was bareheaded"; that the other man, whom he positively identified at the trial as being the appellant, was wearing "bluish-green clothes and a brown plastic cap on his head." A cap was found in the trunk of the appellant's car after he and Allday, and also Mary Ford and Maggie Creel, had been taken into custody in California, where they went in the appellant's car, and were later brought back to Mississippi.

Mary Ford, who worked at the "Corner Bar" in Hattiesburg, testified that she saw the appellant and Jim

Allday at the Corner Bar about 3 o'clock that afternoon, that these two men later left and went to the home of the sister of the witness, and she went home; that Allday later came and took her to her sister's home, and that at approximately 5 o'clock that afternoon the appellant and Allday left her sister's home in a car together. She said that she saw her brother-in-law, Glenn DuBose, with the appellant and Allday during that afternoon; that she next saw the appellant at the Corner Bar at about 9:30 that night and that Allday also soon came in the Bar; and that she and Maggie Creel, who also worked at the Bar, left with the appellant and Jim Allday about 11 o'-clock that night, and later went to Wiggins, where they all spent the night, and that they all returned to the home of the witness and to the home of Maggie Creel the next morning where Mary and Maggie got their clothes and the four of them left immediately for California where they were all taken into custody. Both Mary Ford and Maggie Creel testified that at the time they were with the appellant he was wearing a tan suit.

It appears that the appellant and his wife, from whom he obtained a divorce on the day of the robbery, and the witness Mary Ford, had, about ten days or more prior to the robbery, made a trip together to Nashville, Tennessee, and this circumstance discloses that the appellant and Allday had been associated with one another prior to and on the day of the robbery.

The victim of the robbery, C. H. Gandy, went to the Forrest County jail to identify the robbers after they were arrested and was able to immediately identify Allday as being one of the men who entered the store, but at that time he was not sure that the appellant was the other man, but he testified that after he thought about it further he was sure that the man on trial was the other man who entered the store with Allday and took part in the robbery. He was very positive in his identi-

fication of the appellant at the trial as being the man who was with Allday.

The Highway Patrolman procured photographs of both of the men and he testified that Mr. Gandy identified the appellant and Allday by their photographs as being the two men who robbed him.

Thus it will be seen that the testimony was in such conflict as to present an issue of fact for the determination of the jury under all of the facts and circumstances. ▪▪ We are unable to say that the verdict of the jury was contrary to the law or the overwhelming weight of the evidence. We have carefully considered all of the assignments of error, and we find no ground assigned that would justify a reversal of the case. ▪▪ As to the alleged excessiveness of the sentence, that is not a matter for us to pass on in determining whether the case should be reversed or affirmed.

▪▪ The State was not required under Section 2367, Code of 1942, to either allege or prove that the assault was made by pointing a pistol at the victim. It is only required that the State shall prove that the appellant did feloniously take or attempt to take from the person or from the presence of the owner his personal property against his will by violence to the person of the owner, or by putting him in fear of immediate injury to his person by the exhibition of a deadly weapon. The proof showed that a deadly weapon was exhibited, that the victim was put in fear, and that approximately $400 of his money was taken from the store in the presence of the owner, and of course against his will.

From the foregoing views, it follows that the judgment and sentence appealed from must be affirmed.

Affirmed.

*Roberds, Lee, Ethridge* and *Gillespie, JJ.,* concur.